United States District Court
Southern District of Texas
**ENTERED**
January 25, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| RIGOBERTO SILVA, JR., | § | |
| (TDCJ #02273522), | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:21-cv-00001 |
| | § | |
| HIDALGO COUNTY, | § | |
| IVAN MELENDEZ | § | |
| in his individual capacity, | § | |
| Defendants. | § | |

### <u>REPORT & RECOMMENDATION</u>

Plaintiff, Rigoberto Silva, Jr., a state prisoner[1] proceeding *pro se* and *in forma pauperis*, initiated this action in October 2020, bringing claims pursuant to 42 U.S.C. § 1983.[2]  This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b).

Pursuant to the undersigned's Report and Recommendation on October 8, 2021 (Dkt. No. 38), and a subsequent adoption of said report by the Honorable Judge Micaela Alvarez on

---

[1] Plaintiff was an inmate at Hidalgo County Adult Detention Center ("HCDC") in Edinburg, Hidalgo County, Texas during the time when Plaintiff's claims arose. (Dkt. No. 11 at 10-11.)  Plaintiff is currently a prisoner at Rufe Jordan Unit in Pampa, Grey County, Texas.  *See* Texas Department of Criminal Justice (TDCJ), *Inmate Information Details*, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05692781 (last visited January 22, 2022).

[2] In an Initial Partial Filing Fee and Collection Order entered on January 4, 2021, the Court granted Plaintiff's Motion to Proceed *in forma pauperis* and opened Plaintiff's pleading as a new civil case. (7:20-mc-01190, Dkt. No. 1 at 1.)

November 17, 2021 (Dkt. No. 46), Plaintiff's § 1983 claims regarding a fall from a bunk bed were dismissed. Further, all claims against the Sheriff and the County Commissioners were dismissed. *See* Dkt. Nos. 38, 46. Consequently, Plaintiff's only remaining claims are those against Defendants Hidalgo County and Dr. Ivan Melendez, in his individual capacity, regarding medical treatment Plaintiff received after surgery.

Plaintiff underwent surgery on July 1, 2019. (Dkt. No. 11 at 10.) Upon arriving back to the detention center, Plaintiff alleges Dr. Melendez refused to fill Plaintiff's prescription for Tylenol 3, allegedly due to a policy ban on narcotic pain medication. *Id.* at 11. According to Plaintiff, this refusal resulted in Plaintiff suffering "severe pain." *Id.* As a result of Plaintiff's injury, the pain and suffering he endured when he was denied prescription medication, and his diminished normal life, Plaintiff seeks $9,580,000. *Id.* at 14. Plaintiff also asks the Court to abolish Hidalgo County's policy of banning narcotic pain medication for use at the detention center. *Id.*

After a careful review of the filings, record, and relevant law, and for the reasons set forth below, the undersigned recommends the following:

- Defendant Ivan Melendez, M.D.'s Traditional Motion for Summary Judgment (Dkt. No. 44) be **GRANTED** and Defendant County of Hidalgo's Motion for Summary Judgment (Dkt. No. 45) be **GRANTED** and Plaintiff's federal claims be **DISMISSED with prejudice**;

- With the dismissal of the federal claims, Defendants' Joint Objections to Order on Motion for Production of Documents (Dkt. No. 36) and Plaintiff's Rule 20(a)(2)(A)(B) Motion for Joinder of Parties (Dkt. No. 37) should be **DENIED as moot**; and

- Any state law claims asserted by Plaintiff should be **DISMISSED without prejudice**.

# I.   BACKGROUND

## A. Initial Allegations and Injury[3]

On February 2, 2019, at the Hidalgo County Adult Detention Center, Plaintiff claims he suffered an injury as he got off his top bunk. (Dkt. No. 11 at 10.)  Allegedly, the injury resulted from the lack of a "safety step" or ladder. *Id.* at 1, 8.  At the time of Plaintiff's injury, he was a pretrial detainee.

In an Inmate Request Form, dated February 4, 2019, Plaintiff claimed to have a "small hernia growing in [his inguinal] area." (Dkt. No. 30-2 at 65.)  Plaintiff's injury, an inguinal hernia, was also documented in a Hidalgo County Adult Detention Center Physician Evaluation, dated February 20, 2019. *Id.* at 48.  In an Inmate Request Form, dated February 19, 2019, Plaintiff stated that his hernia had been growing, causing him pain and discomfort, and necessitated medical attention. *Id.* at 67.  He added, "[T]o make matters worse I have a top bunk, jumping off is difficult. Please help!!" *Id.*  Nine days later, Plaintiff wrote, "I currently have a top bunk [and] [e]very time I jump off I feel a lot of pressure [and] discomfort . . . Please help me attain a bottom bunk so I no longer have to jump off." *Id.* at 68.  On March 9, 2019, detention center personnel responded, "Bottom [b]unk approved." (Dkt. No. 30-2 at 68.)  On April 20, 2019, while awaiting surgery, Plaintiff wrote to detention center personnel to remind them that he could not jump off his top bunk and that he needed a bottom bunk. *Id.* at 70.  According to the record, Plaintiff did not complain that jumping off the bed caused the hernia, only that jumping off the bunk bed hurt after Plaintiff developed a hernia. *Id.* at 67-68, 70.  At one point a doctor sees Plaintiff and notes Plaintiff claimed he had the hernia for three months. (Dkt. No. 30-3 at 78.)  At the September 14,

---

[3] These first two sections were originally set out in the undersigned's first Report and Recommendation on October 8, 2021.  While some edits were made, the substance is the same. *See* Dkt. No. 38 at 3-6.

2021 status hearing, however, Plaintiff claims he never said three months, but three weeks.  (FTR

Log Notes, 7:21-cv-001 SILVA v MELENDEZ ET AL, MDC-814-MJFA, at 2:31 p.m. to 2:33

p.m. timestamp.)

### B. Surgery and Related Medical Care Prescribed and Administered

On July 1, 2019, Plaintiff underwent surgery for his injury.[4]  (Dkt. No. 11 at 10.)  After

surgery, the surgeon, Dr. Bob Saggi, prescribed Tylenol 3[5] to be taken "[e]very 6 hours for 7 Days

[a]s [n]eeded for pain." (Dkt. No. 30-3 at 42.)  According to Plaintiff, Dr. Saggi instructed Plaintiff

and a transporting officer to not let the last dose of Tylenol 3 wear off "before taking the next

[dose] or [Plaintiff] will be in a world of [p]ain." (Dkt. No. 11 at 11.)  The discharge instructions

stated, "Take your pain medications as needed. After [two] days, you should be in little or no pain."

(Dkt. No. 30-3 at 53.)  Additionally, the instructions advised that if Plaintiff still had pain an hour

after taking the medication, he should call the surgeon, because the medicine may not be strong

enough.  *Id.* at 56.  The surgeon's prescription was sent to detention center medical staff.  *Id.* at

75.

---

[4] By this time, Plaintiff was no longer a pretrial detainee but instead a state prisoner as he had been sentenced on June 24, 2019 to a term of seven years' imprisonment for various state felony offenses. (Dkt. No. 30-2 at 6.)  On June 24, 2019, in the 370th District Court, Hidalgo County, Texas, Plaintiff was sentenced to 7 years in prison for the following two offenses that occurred on November 27, 2015, to run concurrently with each other: (1) felony driving while intoxicated (DWI), and (2) intoxicated assault with a vehicle causing serious bodily injury in State Case No. CR-2639-16-G. *Id.*; *see also* Texas Department of Criminal Justice (TDCJ), *Inmate Information Details*, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05692781 (last visited January 5, 2022). Additionally, on that same date in the 370th District Court, Hidalgo County, Texas, Plaintiff was also sentenced to 7 years in prison for the following 3 offenses that occurred on July 21, 2018, each to run concurrently with each other: (1) evading arrest with a vehicle, (2) felony DWI, and (3) unlawful possession of a firearm by a felon in State Case No. CR-3707-18-G.  TDCJ, *Inmate Information Details*, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05692781 (last visited January 5, 2022).

[5] Tylenol 3 is a combination of acetaminophen, the active ingredient in Tylenol, and codeine. *See* Acetaminophen and Codeine (Oral Route), Mayo Clinic (January 18, 2022), https://www.mayoclinic.org/drugs-supplements/acetaminophen-and-codeine-oral-route/description/drg-20074117.

Upon arriving back to the detention center, medical staff refused to fill the surgeon's prescription for Tylenol 3. (Dkt. No. 30-3 at 75.) However, medical staff administered alternative pain medication. The record shows Dr. Lung, via telephone order, prescribed ibuprofen 600 mg twice per day on July 1, 2019. *Id.* at 75. Then, on July 2, 2019, Plaintiff complained of more pain and Dr. Lung, again via telephone order, prescribed an additional medication—Tylenol 500 mg twice per day as needed. *Id.* at 73. As Plaintiff continued to complain of pain, jail staff sought to transfer Plaintiff to the infirmary. *Id.* Plaintiff refused to be transferred to the infirmary but was prescribed ibuprofen 800 mg twice per day. *Id.*

The next day, on July 3, 2019, Officer Hernandez wheelchaired Plaintiff in for a "walk in sick call" to see medical staff. (Dkt. No. 30-3 at 73.) During this visit, Plaintiff requested pain medication. *Id.* Medical staff instructed Plaintiff of the medication adjustment provided the day before. *Id.* Plaintiff stated he had a fever. *Id.* A medical staff member took his temperature, which was normal, and noted that the surgical site was clean, dry, and intact, with no sign of infection. *Id.* Staff then wheelchaired Plaintiff back to his section. *Id.*

In an Inmate Request Form, dated July 4, 2019, Plaintiff wrote he was in a lot of pain and his medication would wear off between the two doses he was being given, one in the morning and one in the afternoon. (Dkt. No. 30-2 at 20.) Plaintiff wrote,

> I am in a lot of pain[.] The facility infirmary has been denying me meds in between the morning and late afternoon. The hospital ordered pain med every 6 hrs and to not wait until the last dose [wears off] to take the next. Here they are only giving me [medication] at around 9 am and 7 pm. By the time I get my dose I am completely on no pain meds and feel the full effect of the surgery. Stitches pulling and hernia mesh rubbing plus my [scrotum] is swollen and causing me throbbing pain. All I have been asking for is a dose in between the morning and late afternoon so I'm not left suffering throughout the day. This is the [fourth] day I have to endure the pain on my own. They keep threatening with isolation. I don't need to be put in infirmary where no one will help me up out of my bunk and to walk to the toilet. Here I am fine. *I just need one more dose in between.* Please help.

(Dkt. No. 30-2 at 20) (emphasis added). Detention center personnel responded the following day, stating, "You have an [appointment] coming up. Your surgeon will upgrade your dosage if needed [and] will let our infirmary staff know as well." *Id.* On July 6, 2019, Plaintiff submitted an additional Inmate Request Form, which stated, "Need cough [and] pain meds. [E]very time I cough my surgery hurts." *Id.* at 66. Subsequently, at Plaintiff's request, medical staff started Plaintiff on Motrin 800 mg at 2:00 p.m. for seven days. (Dkt. No. 30-3 at 72.) At this point, staff had increased Plaintiff's medications to address each of his complaints of pain, even providing him Motrin between the morning and evening pain medication dosages.

According to the Medical Activity Log, Dr. Melendez did not meet with, nor evaluate, Plaintiff until July 9, 2019, eight days after Plaintiff's surgery. When Dr. Melendez met with Plaintiff on July 9, 2019, Dr. Melendez did not change Plaintiff's medications or add to the dosages. (Dkt. No. 30-3 at 72.) The "plan" was to "continue observation." *Id.* There are no further Medical Activity Log entries or Inmate Request Forms suggesting Plaintiff continued to complain of pain stemming from his surgery.

### C. Previous Report and Recommendation & Updated Filings

On October 8, 2021, the undersigned filed a Report and Recommendation that recommended all federal claims set out by Plaintiff be dismissed except for Plaintiff's § 1983 claim regarding a policy ban and medical treatment against Dr. Melendez, in his individual capacity, Plaintiff's § 1983 claim regarding the policy ban against the County, and any state law claims. (Dkt. No. 38 at 2-3).

On November 17, 2021, the Honorable Judge Alvarez adopted said Report and Recommendation and remanded all further proceedings back to the undersigned for review and consideration. (Dkt. No. 46 at 2.)

On October 14, 2021, pending the review of the noted Report and Recommendation, Defendant Melendez submitted an affidavit, as ordered in the September 15, 2021 Order. *See* Dkt. Nos. 34, 39-1.

On November 15, 2021, Defendant Melendez filed a Motion for Summary Judgment ("Dr. Melendez's Motion for Summary Judgment"). (Dkt. No. 44.) In it, Dr. Melendez argues that since Dr. Melendez was not the physician who discontinued the prescribed medication of Tylenol 3 and since Plaintiff did not request pain medication from him, there is no genuine issue as to any material facts, warranting summary judgment. *Id.* at 8. Dr. Melendez's main argument is that Plaintiff fails to establish a claim or establish any cause of action. *Id.* at 8, 24. In support of Dr. Melendez's assertion that Plaintiff failed to establish a claim, Dr. Melendez states that Plaintiff failed to establish an essential element of his Eighth Amendment claim—that Dr. Melendez was deliberately indifferent to his serious medical need. *Id.* at 9. Additionally, Dr. Melendez asserts Plaintiff cannot show Dr. Melendez's acts proximately caused Plaintiff's alleged injuries. *Id.* at 18. Dr. Melendez also asserts Plaintiff does not plead any facts that support a Fourteenth Amendment violation by Dr. Melendez "because Dr. Melendez did not deny any medical care to Plaintiff or deprive Plaintiff of due process." *Id.* at 20. Dr. Melendez asserts he was not the physician who decided to discontinue the prescribed medication, Plaintiff requested no pain medication from him, and Plaintiff's allegations are conclusory and speculative. (Dkt. No. 44 at 20-21.)

In support of Dr. Melendez's assertion that a decision to provide alternative medication to Plaintiff would be reasonable, Defendant points to Plaintiff's disclosed history of alcohol and substance use as well as the likelihood that Plaintiff would experience withdrawal symptoms from a narcotic medication. *Id.* at 21-22. In any event, Dr. Melendez opines, the Hidalgo County

Detention Center's pharmacy does not stock or maintain inventory for narcotic medication, including Tylenol 3.  *Id.* at 22.

On November 15, 2021, Hidalgo County also filed a Motion for Summary Judgment.  (Dkt. No. 45.)  In it, the County claims there is no genuine issue of material fact regarding a policy ban on narcotics having caused the deprivation of Plaintiff's constitutional rights.  (Dkt. No. 45 at 4.)  According to the County, Plaintiff has not established there was a policy adopted with deliberate indifference to his constitutional rights as he has not demonstrated a pattern of deliberate indifference.  (Dkt. No. 45 at 5.)  And further, Plaintiff's constitutional rights were not violated.  *Id.*  Medical staff were responsive to Plaintiff and provided him with adequate pain medication.  *Id.* at 8.  And county medical staff examined Plaintiff twice, on July 3 and July 9, for signs of infection, apparently "the most serious potential surgical complication."  *Id.*  In addition, Plaintiff was not receiving only "minor pain relievers," he was receiving "twice the maximum over-the-counter dosage of ibuprofen."  *Id.* (citing Wal-Mart Stores, Inc., *Ibuprofen tablet, film coated*, DailyMed (National Library of Medicine, National Institutes of Health & Human Services 2019), *available at* https://dailymed.nlm.nih.gov/dailymed/getFile.cfm?setid=307b0257-d636-416b-828a-f901782e9b10&type=pdf, also attached as Exhibit B (Dkt. No. 45-2)).  Finally, the County asserts there is no evidence that staff "refused to treat [Plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Id.* (citing *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

On December 16, 2021, Plaintiff filed Plaintiff's Response [i]n Opposition to Defendant's [sic] Motion for Summary Judgement [sic] ("Plaintiff's Response") (Dkt. No. 48) and Plaintiff's

Affidavit (Dkt. No. 48-1). Plaintiff's Response and Plaintiff's Affidavit[6] assert the same claims contained in the rest of the pleadings; essentially, Plaintiff argues: (1) that Dr. Melendez failed to provide adequate medical care by ignoring the instructions provided by Dr. Saggi (Dkt. No. 48 at 4-5); (2) a rational jury could make a determination that there is a de facto ban on narcotic pain medication since it is not available at the facility and the denial of Plaintiff's pain medication was not based on an individual evaluation of an incarcerated individual, but rather, the result of that ban (*id.* at 9); (3) the medication provided was inadequate to treat Plaintiff's medical condition to the point that Dr. Melendez was deliberately indifferent to his medical needs (*id.* at 13, 17); and (4) in summary, enough evidence has been set out "from which a reasonable jury could infer a doctor knew he was providing deficient treatment" due in part to an unwritten ban on narcotic pain medication and, in part, failure to follow instructions provided by the surgeon (*id.* at 15, 22-23).

To summarize, the following matters are before the undersigned for resolution: (1) the Joint Objections to Order on Motion for Production of Documents (Dkt. No. 36), (2) Plaintiff's Joinder of Dr. Lung (Dkt. No. 37), (3) Dr. Melendez's Motion for Summary Judgment (Dkt. No. 44), (4) Hidalgo County's Motion for Summary Judgment (Dkt. No. 45) (collectively, the "Motions"), and pleaded state law claims pertaining to an alleged fall from a bunk bed while in the County's custody and failure for medical personnel at the county jail to follow Plaintiff's surgeon's prescription.

Based on review of the filings and record, the Motions are ripe for review.

## II.  APPLICABLE LAW & ANALYSIS

### A. Summary Judgment Standard

Defendants have formally filed motions for summary judgment. Summary judgment is

---

[6] To the extent there are discrepancies between the facts provided in prior pleadings and these pleadings, footnotes throughout this Report and Recommendation address them.

appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant for summary judgment presents "a properly supported motion for summary judgment, the burden shifts to the non-moving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). Within this review, a district court must construe disputed facts in a light favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, a court must view summary judgment motions through "the prism of the substantive evidentiary burden." *Id.* at 254.

"[The non-movant's] burden is not satisfied with 'some metaphysical doubt as to the material facts' . . . by 'conclusory allegations' . . . by 'unsubstantiated assertions' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 586, (1986); *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990); *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994)). Rather, the non-moving party must "come forward with specific facts that there is a genuine issue at trial." *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Anderson*, 477 U.S. at 248; *Little*, 37 F.3d at 1075.

## B. Deliberate Indifference-Eighth Amendment Standard

At the time of Plaintiff's alleged injury stemming from the alleged policy ban and deprivation of Tylenol 3, Plaintiff was a prisoner detainee. "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual

10

punishment, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and with relatively limited reach, from substantive due process." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). Accordingly, Plaintiff's claims are properly evaluated under the Eighth Amendment.[7]

"State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). In other words, a state officer can be held "personally liable for damages under § 1983 based upon actions taken in their official capacities." *Id.* at 24; *see also* 42 U.S.C. § 1983.

Under the Eighth Amendment, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (quotation marks and citation omitted). The Court continued, "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (citations omitted). Further, "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C.] § 1983." *Id.* at 105. In reaching this decision, the Court noted that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* In the context of providing medical care, "inadvertent failure to provide medical care," a doctor's negligence in diagnosis or treatment of a medical condition, or even medical malpractice are not "cognizable claims" under the Eighth Amendment. *Id.* at 105-06. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 105-06.

---

[7] *See Estelle*, 429 U.S. at 101 ("The gravamen of respondent's [42 U.S.C.] § 1983 complaints is that petitioners have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth." (citation omitted)).

11

Considering it is more than an accident, negligence, or medical malpractice, "deliberate indifference is an extremely high standard." *Petzold v. Rostollan*, 946 F.3d 242, 248-49 (5th Cir. 2019) (citing *Domino*, 239 F.3d at 756). A plaintiff needs to show: (1) a serious medical need, (2) officials were subjectively aware of this need, and (3) the officials, despite actual knowledge of the serious need, denied or delayed the prisoner's medical treatment. *Id.* at 249 (citations omitted). Further, "the prisoner must show that the delay in or denial of medical treatment resulted in substantial harm, such as suffering pain." *Id.* (citation omitted). However, "[a] disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference." *Id.* (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)).

To establish deliberate indifference, a plaintiff can present evidence prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Estelle*, 429 U.S. at 104-05. "An official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment request for the same injury." *Petzold*, 946 F.3d at 251. Substitution of a pain medication may rise to the level of deliberate indifference, however, where a plaintiff has presented no evidence that the substitute medication was less effective in dealing with his pain than a narcotic medication, there is no finding of deliberate indifference. *Burton v. Owens*, 511 F. App'x 385, 389 (5th Cir. 2013). The mental state evaluated is subjective recklessness, which occurs when a person disregards a risk of harm of which he is aware. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Further, a prison official acts or fails to act with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*

12

at 847.

In general, prescribing alternate medical treatment than the Plaintiff desires will be a matter of medical judgment that does not rise to the level of deliberate indifference. *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015). However, if the alternate medical treatment is chosen after a *specialist* or *surgeon* prescribes a particular treatment, then courts have handled that situation differently, as addressed below.

A doctor's refusal to implement a specialist's treatment can be one factor in establishing a doctor's deliberate indifference. However, this finding has been supported by other factors such as the length of time in which the specialist's treatment is delayed, the doctor's actions or omissions in the time during which the prescribed treatment is ignored, and other facts establishing a doctor's mental state at the time of treatment.[8] These factors are important, because there could be valid reasons for the medical staff's denial of prescription narcotics such as "suspected misuse, addiction, or abuse." *Brauner,* 793 F.3d at 499.

Significantly, "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they *responded reasonably* to the risk, *even if the harm ultimately was not averted.*" *Farmer,* 511 U.S. at 844 (emphasis added). In denying the prescription medication, the prison staff "must know of an 'excessive risk' posed by her actions or inactions," not solely *some* risk of harm to be deliberately indifferent. *Williams v. Scheef,* 824 Fed. App'x. 268, 270 (5th Cir. 2020) (quoting *Brewster v. Dretke,* 587 F.3d 764, 770 (5th Cir.

---

[8] *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (where medical staff stood "idly by for more than ten months while Arnett's [rheumatoid arthritis] progressively worsened and caused permanent damage to his joints"); *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999) (where not only did the doctor ignore a specialist's treatment, but actively denied Jones pain medication and did not arrange for Jones to see a nerve specialist for six months after the doctor noted Jones should see one).

2009)).[9]

### C. Dr. Melendez's Treatment of Plaintiff Did Not Show Deliberate Indifference

Plaintiff claims Dr. Melendez was deliberately indifferent to Plaintiff's serious medical need in prescribing a treatment for post-operative pain different from what Plaintiff's surgeon prescribed. (Dkt. No. 11 at 3.)  Dr. Melendez's first interaction with Plaintiff was on July 9, 2019, eight days after Plaintiff's surgery.  (Dkt. No. 30-3 at 72.)  Following the July 9th visit, Dr. Melendez's plan was to continue observation.  *Id.*

First, Plaintiff did not provide evidence Dr. Melendez refused to treat him.  Plaintiff originally stated Dr. Melendez refused to provide Tylenol 3 and instead prescribed ibuprofen, however, the record shows Dr. Melendez did not make the decision to discontinue Tylenol 3 and offer an alternative medication, but rather, Dr. Lung made that decision.[10]  After Plaintiff apparently realized his mistake, he moved to join Dr. Lung as a defendant.  (Dkt. No. 37.)  Yet, in his affidavit, Plaintiff returned to his assertion that it was Dr. Melendez, not Dr. Lung, who denied

---

[9] Practically speaking, the standard of review under the Eighth Amendment is the same for either a pretrial detainee or a convicted prisoner.

"Finally, we turn to the question of whether to apply an objective or subjective definition of deliberate indifference. Finding *no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates* to basic human needs, including medical care and protection from violence or suicide, we conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*."

*Hare*, 74 F.3d at 643 (emphasis added) (referencing generally *Farmer*, 511 U.S. 825).

[10] As of October 1, 2021, Plaintiff filed a Motion for Joinder of Dr. Lung. (Dkt. No. 37.) In it, and set forth in other pleadings, Plaintiff states that Dr. Lung, not Dr. Melendez, discontinued Plaintiff's prescription and prepared the pain management plan. (Dkt. No. 37 at 2, ¶ 1; Dkt. No. 38 at 6, 16; Dkt. No. 39-1 at 3, ¶ 2; *see also* Dkt. No. 44 at 14.) Plaintiff returns to his assertion that a nurse called Dr. Melendez, and not Dr. Lung in his affidavit. (Dkt. No. 48-1 at 6, ¶ 15, at 7, ¶ 18.) However, as will be shown in this Report and Recommendation, regardless of which doctor was called, Plaintiff received adequate medical care and, consequently, does not have a constitutional claim.

the prescription medication.  *See* Dkt. No. 48-1 at 6, ¶ 15, at 7, ¶ 18.  Ultimately, the records do not show Dr. Melendez refused to treat Plaintiff.

Second, Plaintiff did not provide evidence Dr. Melendez ignored Plaintiff's complaints. Importantly, in Plaintiff's Complaint and Plaintiff's Amended Complaint, he does not discuss grievances to Dr. Melendez about pain.  *See generally* Dkt. Nos. 2, 11.  And the record, despite other notations about complaints of pain, does not refer to any such complaints during Plaintiff's July 9, 2019 visit with Dr. Melendez.  (Dkt. Nos. 30-3 at 72.)  In his affidavit, Dr. Melendez supports this finding by asserting Plaintiff did not complain of pain during his visit.  (Dkt. No. 39-1 at 3.)  In Plaintiff's Response, Plaintiff alleges he informed Dr. Melendez "the Motrin was ineffective and that his scrotum was still swollen and causing throbbing pain." (Dkt. No. 48 at 14, ¶ 24.)  Dr. Melendez allegedly responded, "Ah your [sic] a big boy you can take it . . . these guys can't stay out of other people's yard then they come here and complain about medication." *Id.* According to Plaintiff, Dr. Melendez hurried Plaintiff out of the room without any examination and established a plan to continue observation.  *Id.* at 15, ¶ 25.  Importantly, however, Plaintiff's medication had been adjusted on the second, third, and sixth days of July.  (Dkt. No. 30-3 at 82.)

Accordingly, Dr. Melendez's continuation of Plaintiff's prescribed medication (ibuprofen 800 mg twice per day, Tylenol 500 mg twice per day as needed, and Motrin 800 mg at 2:00 p.m.), would not demonstrate deliberate indifference to Plaintiff's serious medical need.  *Petzold*, 946 F.3d at 251.  Thus, regardless of whether Plaintiff complained about pain at the July 9th visit, Dr. Melendez acted reasonably, considering the new medication prescribed to Plaintiff within the preceding days, in continuing Dr. Lung's prescribed treatment.  And while there may be disagreement about what happened at this visit, the disagreement is not a genuine issue of *material* fact.

Third, Plaintiff did not provide evidence that Dr. Melendez intentionally treated Plaintiff incorrectly. Again, the record shows it was Dr. Lung, not Dr. Melendez, who ignored the surgeon's prescription. (Dkt. No. 39-1 at 3.) Further, Plaintiff did not detail any specific complaint about Dr. Melendez's evaluation of him.

In *Burton v. Owens*, the Fifth Circuit held the plaintiff's pain management did not rise to the level of deliberate indifference. 511 F. App'x at 389-90. The Court noted, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances, and we have previously found that the decision to provide additional treatment is a classic example of medical judgment." *Burton*, 511 F. App'x at 389 (internal quotations and citations omitted). In other words, the Fifth Circuit drew a distinction between those cases where prison officials refused to provide an inmate with *any* pain treatment and those cases where staff substituted one pain medication for another. *Id.*

In *Burton*, "one prescription pain medication—800 milligrams of ibuprofen—[was substituted] for another—Percocet." *Id.* The Fifth Circuit explained, "With no evidence that such a substitution was unreasonable, we cannot find that the Defendants' actions amounted to a failure to take reasonable measures to abate Burton's pain." *Id.* Accordingly, in affirming summary judgment for the defendants, the Fifth Circuit held that the plaintiff failed to establish deliberate indifference because the defendants did not disregard plaintiff's serious medical needs. *Id.*

Similarly, viewing the facts in the light most favorable to Plaintiff, the Plaintiff has not demonstrated Dr. Melendez acted with deliberate indifference. Plaintiff has not shown Dr. Melendez actually knew of a substantial risk to his health or safety by continuing already prescribed medications. Further, even if Dr. Melendez did know of a substantial risk to Plaintiff's

health and safety, and even if Plaintiff proved his harm, Dr. Melendez responded reasonably by continuing to follow the pre-existing treatment plan.  Therefore, Plaintiff has not shown Dr. Melendez acted with deliberate indifference.

Fourth, Plaintiff did not provide evidence that Dr. Melendez engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Therefore, the undersigned recommends Dr. Melendez's Motion for Summary Judgment be granted.

### D.  No Evidence Dr. Melendez Enacted an Alleged Policy Ban

Plaintiff asserts Dr. Melendez "consciously, enacted or adopted a policy disfavoring—if not forbidding—adequate medical treatment for severe pain . . . to enforce a blanket policy . . . ." (Dkt. No. 23 at 8, ¶ 9.)  Plaintiff also asserts that although it was Dr. Lung who denied the Tylenol 3, Dr. Lung's refusal was pursuant to Dr. Melendez's policy ban.[11]   (Dkt. No. 37 at 2, ¶ 3.) Although it is possible Dr. Melendez, in his individual capacity as a contracted physician, did implement or enforce an alleged policy ban, Plaintiff has pleaded no facts supporting his allegation.[12]  *See* Dkt. Nos. 11, 23, 48.

---

[11] As discussed in the Report and Recommendation, Plaintiff's claim that Dr. Melendez, in his official capacity, created a policy ban on narcotics was dismissed.  (Dkt. No. 38 at 25-26, Section IV.)  However, to the extent that Dr. Melendez, as a contracted physician, could have enacted a policy or custom banning narcotic medication, Plaintiff's claim is addressed.

[12] Dr. Melendez asserts, "No policy was created in either of Dr. Melendez's capacities nor does this policy exist, as confirmed by Hidalgo County at the status conference held before the Court." (Dkt. No. 44 at 18.) The undersigned notes, however, that the possibility of a policy ban remains because (1) the County only stated there was no *written* policy banning narcotic medications, (2) the County Detention Center pharmacy does not stock or maintain narcotics, and (3) although there is no evidence that Dr. Melendez had the authority to create a policy ban, Dr. Melendez has only presented conclusory statements regarding his inability to create such a ban.  *See Pembaur v. Cincinnati*, 475 U.S. 469, 481 n.10 (1986) ("A § 1983 plaintiff may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to provide that the challenged action was pursuant to a state 'custom or usage.'"). The issue of county liability will be addressed in the next section.

Plaintiff provides no evidence that Dr. Melendez was at all directly involved in the denial of Plaintiff's prescription medication. Nor does Plaintiff allege sufficient facts to support "threadbare" allegations that Dr. Melendez was in any way involved in implementing the alleged policy that resulted in the alleged constitutional injury. *See Iqbal*, 556 U.S. at 678; *see generally* Dkt. Nos. 11, 23, 48. Based on the foregoing, Plaintiff did not establish evidence that Dr. Melendez enacted a policy or custom against narcotics. Therefore, the undersigned recommends Dr. Melendez's Motion for Summary Judgment be granted.

### E. Claim Against Hidalgo County Does Not Survive Summary Judgment

Plaintiff also argues Hidalgo County was deliberately indifferent to his serious medical need through the blanket enforcement of a policy ban on narcotics. (Dkt. No. 11 at 5, ¶ 13; Dkt. No. 23 at 14-15, ¶ 16.) The record supports that although there may not be a written policy ban, there is a custom against providing narcotic medication at the Hidalgo County Detention Center. According to Dr. Melendez, the Hidalgo County Detention Center's pharmacy does not stock or maintain inventory for narcotic medication, including Tylenol 3. *See* Dkt. No. 44 at 22. For the purpose of this analysis, the undersigned will assume a ban is in place. *See Monell v. Dep't of Soc. Serv's of New York*, 436 U.S. 658, 690-91 (1978) (holding "local governments, like every other §1983 'person', may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.").

### 1. Plaintiff did not provide County Notice of a Series of Constitutional Violations

To assert a claim against a local government entity under 42 U.S.C. § 1983, a plaintiff must plead facts to plausibly establish "a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Ratliff v. Aransas County*,

948 F.3d 281, 285 (5th Cir. 2020). A facially innocuous policy will only support liability if it was "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

To establish a facially innocuous policy was adopted with the deliberate indifference necessary to support municipal liability, a plaintiff must generally demonstrate a pattern of similar constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action— the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). Without notice of a policy's deficiencies, policymakers cannot be said to have deliberately chosen such a policy that causes violations of constitutional rights. *Id.* at 62.

Importantly, Plaintiff, while experiencing pain from surgery, did not state his pain issue arose from the *type* of provided medicine, but rather, with the *timing* of the medicine. (Dkt. No. 30-2 at 20.) According to an Inmate Request Form, Plaintiff stated the medicine was wearing off, causing him to feel the pain of his surgery. *Id.* Plaintiff did not claim he needed stronger medicine nor that the medicine provided was ineffective when he took it. Rather, Plaintiff wrote he needed the medicine in the afternoon between his two doses. *Id.* This implies that when Plaintiff was able to take the medicine, the medicine was effective until it wore off. The risk of pain relievers requiring an adjusted dosage is not unusual, as Plaintiff would have faced this risk even if his unit provided the Tylenol 3. *See* Dkt. No. 30-3 at 56.

Further, even if the undersigned were to assume Plaintiff did complain the medicine

provided was ineffective in treating his pain, Plaintiff did not cite to a pattern of similar constitutional violations.   As such, Plaintiff did not provide the appropriate notice to Hidalgo County of the potentially unconstitutional nature of their policy.   And, Plaintiff has not presented evidence the County was likely to believe inmates received inadequate medical care due to the alleged policy ban on narcotics.   Such a policy does not appear unreasonable on its face, as "[i]t is common knowledge that many persons obtain pain medication prescriptions by fraud or misrepresentation."   *See Sawyer v. Noble*, 708 F. Supp. 2d 591, 595 (W.D. Va. 2010).   Further, "[w]hile a different policy might also be reasonable, there is no evidence here that [D]efendants . . . should have believed that [the County] policy denied adequate medical care to inmates under their control."   *Id.*   Based on the foregoing, the undersigned recommends Hidalgo County's Motion for Summary Judgment be granted.

### 2.   Plaintiff's Sister Circuit Citations—Distinctions

As an initial matter, since the Southern District of Texas is in the Fifth Circuit, Fifth Circuit cases carry precedential value, whereas sister circuit decisions do not.   *See United States v. Massey*, No. 1:14-CR-876-1, 2015 WL 13343890, at *4 (S.D. Tex. June 5, 2015) (where the district court stated it is bound by the Fifth Circuit and the Supreme Court).

Although it is true that the denial of a prescription medication may be found unconstitutional, and Plaintiff cites to *McAdoo v. Martin (McAdoo II)*, 899 F.3d 521, 524 (8th Cir. 2018)[13] and *Strahan v. Rottnek*, No. 4:13CV448 SNLJ, 2015 WL 249448, at *1 (E.D. Mo. Jan. 20, 2015) to support this argument, there are many distinctions between these two cases and Plaintiff's

---

[13] The district court opinion reviewed by the Eighth Circuit will be referred to as *McAdoo I. McAdoo v. Martin (McAdoo I)*, No. 6:13-CV-06088, 2017 WL 1091348, at *3 (W.D. Ark. Mar. 21, 2017), *aff'd in part, rev'd in part and remanded*, 899 F.3d 521 (8th Cir. 2018).

case.[14]  As noted, these cases do not have any precedential value before this court.

In reviewing the findings of the district court, the appellate court left the factual findings, detailed here, undisturbed.  *See McAdoo II,* 899 F.3d at 523-24.[15]  As detailed in *McAdoo II,* in *McAdoo I,* the district court found medical staff at a jail acted with deliberate indifference by failing to provide adequate medical care through their blanket application of a policy ban against all narcotics.  *Id.*  An emergency room physician prescribed McAdoo narcotic pain medication for his shoulder injuries stemming from an incident wherein, in attempting to stop a fight, a jail official tackled McAdoo.  *Id.* at 523.  Upon return to the detention facility, jail medical staff did not even attempt to assess McAdoo's pain level before deciding, pursuant to their policy against narcotic medication, to give McAdoo non-narcotic medication.  *Id.* at 524.  In lieu of hydrocodone medication, McAdoo was provided non-narcotic pain medication (Tylenol and ibuprofen) every four to six hours.  *McAdoo v. Martin (McAdoo I),* No. 6:13-CV-06088, 2017 WL 1091348, at *3 (W.D. Ark. Mar. 21, 2017), *aff'd in part, rev'd in part and remanded,* 899 F.3d 521 (8th Cir. 2018).  Notably, the lack of effort in determining McAdoo's pain level demonstrated a lack of medical judgment.  *McAdoo II,* 899 F.3d at 523.

In a follow-up appointment at the hospital two days later, McAdoo notified a doctor that the over-the-counter pain relievers were inadequate for his shoulder pain.  *McAdoo I,* 2017 WL 1091348, at *4.  According to McAdoo, the doctor advised he could not prescribe hydrocodone

---

[14] In addition, Plaintiff cites a string of Eighth Circuit and Sixth Circuit cases to support his claim.  (Dkt. No. 48 at 3-4, 5, 7, 10, ¶¶ 4, 5, 8, 10, 16.)  These citations, while not wholly irrelevant to the instant case, are not precedential.  The holdings in those cases are sufficiently addressed by distinguishing *McAdoo II* and *Strahan* from the instant case.

[15] The issue for the appellate court was not whether this finding was in error but whether either compensatory or punitive damages could be awarded based on such a finding as the district court only awarded $1 nominal damages, plus the costs of the filing fee.  *Id.* at 525.

medication to McAdoo. *Id.* For approximately two-and-a-half weeks after he was injured, McAdoo remained at the jail facility before he was transferred to a state prison. *Id.* at \*5. Once at the prison facility, and about a month after being transferred, McAdoo was prescribed hydrocodone. *Id.* A month later, McAdoo was prescribed hydrocodone and Tramadol on an occasional basis. *Id.*

Unlike McAdoo, nurses observed Plaintiff and consulted with a doctor (Dr. Lung) about the pain medication to be prescribed. Furthermore, when Plaintiff complained about the pain medication wearing off between morning and evening doses, medical personnel at the jail increased the non-narcotic pain medication provided to address Plaintiff's needs.[16] Thus, even assuming a de facto policy, medical personnel still directly addressed Plaintiff's needs, which was not the case for McAdoo.

Additionally, Plaintiff relies on *Strahan v. Rottnek* in support of the proposition that there "was a causal link between the policy and the increased pain [he] suffered as a result of not receiving the prescribed medication." *See* Dkt. No. 13 at 9, ¶ 19. In *Strahan v. Rottnek*, Strahan complained "his pre-existing prescription pain medication was intentionally and abruptly withdrawn and substituted with over-the-counter medication that was insufficient to properly treat

---

[16] Plaintiff, for the first time, mentions in his response to Dr. Melendez's motion for summary judgment that his pain lasted 12 days. (Dkt. No. 48 at 2, ¶ 1, at 5, ¶ 5, at 14, ¶ 37.) In Plaintiff's affidavit, he also asserts that the Motrin was ineffective. (Dkt. No. 48-1 at 11-13 ¶¶ 30, 34.) This information would have been in Plaintiff's possession when he initially filed this matter. Assuming the newly added information is true for purposes of summary judgment review; Plaintiff still does not set out that the County was deliberately indifferent to his needs. Despite the de facto ban on narcotic pain medication, medical personnel did attend to his complaints and did increase pain medication when requested. At most, the facts may point to jail personnel being negligent but, as noted, negligence is not the same as deliberate indifference. *Farmer*, 511 U.S. at 835 ("We have since read *Estelle* [*v. Gamble*] for the proposition that the Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Piotroswki*, 237 F.3d at 580 (noting deliberate indifference is a stringent test and "a showing of simple or even heightened negligence will not suffice" to provide municipal liability).

his chronic pain based solely on a policy implemented by Dr. Rottnek as opposed to a medical judgment made after individual examination." *Strahan*, 2015 WL 249448, at \*1. In other words, the plaintiff had a pre-existing prescription for narcotic pain medication *before incarceration*. *Id.* at \*4 (emphasis added). Then the medical staff, pursuant to a policy against prescribing narcotics, placed the plaintiff on Tylenol. *Id.* Medical staff followed the policy without regard for the plaintiff's individual medical needs. *Id.* The court stated the doctor "disregard[ed] the medical judgment of the treating physicians . . . without examining the inmates and making his own medical judgment regarding their medical needs prior to the implementation of his pain management policy." *Id.*

Here, medical staff examined Plaintiff and his individual medical needs between the time he returned from the hospital and the time non-narcotic pain medication was ordered through his consultation with the nurse who teleconferenced with a doctor. Further, Plaintiff was not on the Tylenol 3 long enough to suffer from withdrawal.

Finally, to the extent Plaintiff contends "[a] blanket policy denying narcotic pain medication to inmates . . . regardless of medical need is unconstitutional," Plaintiff is correct in the citation, but incorrect in the application of such a statement. (Dkt. No. 48 at 8, ¶ 12 (citing *Franklin v. Dudley*, No. 2:07-CV-2259 FCD KJN, 2010 WL 5477693, at \*7 (E.D. Cal. Dec. 29, 2010), *adhered to*, No. 2:07-CV-2259 KJM KJN, 2011 WL 2493770 (E.D. Cal. June 22, 2011).) Medical staff evaluated and examined Plaintiff's medical need, and provided an adequate substitute for the prescribed narcotic medication. Therefore, even assuming Plaintiff confronted a blanket policy or custom denying narcotic pain medication to inmates in his unit, Plaintiff's claim, based solely on his individual injury and confronted by the record's evidence, does not rise to the level of deliberate indifference.

### 3. Plaintiff Received Adequate Medical Care

In sum, the medical staff, pursuant to an apparent policy ban on narcotics, sought an adequate alternative to Plaintiff's narcotic prescription medication.  Based on the nurse's and doctors' evaluations, medical staff provided Plaintiff with what they believed was an adequate alternative for pain maintenance, increasing the dosage and frequency of the medication upon Plaintiff's requests.

Based on the foregoing timeline, Plaintiff received adequate medical care.  When Plaintiff's alternative pain medication wore off, medical staff gave Plaintiff more medication. Further, there is ample evidence in the record that Plaintiff received multiple evaluations and individual examinations.  Receipt of adequate medical care does not give rise to an Eighth Amendment claim.  Accordingly, the undersigned recommends Hidalgo County's Motion for Summary Judgment be granted.

### F. Remaining Motions

#### 1. Plaintiff's Joinder of Dr. Lung and Defendants' Joint Objections

Because the undersigned has established Plaintiff received adequate medical care while in the County's custody and said care does not rise to the level of deliberate indifference, Dr. Lung need not be joined.  Accordingly, the undersigned recommends Plaintiff's Motion for Joinder (Dkt. No. 37) be denied as moot.  It is further recommended that Defendants' Joint Objections to production of documents (Dkt. No. 36) be denied as moot.

#### 2. Supplemental Jurisdiction

In addition to Plaintiff's § 1983 claims, Plaintiff may assert state law claims under the Texas Tort Claims Act (TTCA).  *See* Tex. Civ. Prac. & Rem. Code § 101.025. Whereas Plaintiff's § 1983 claims invoke original jurisdiction, a federal court requires supplemental jurisdiction over

the state law claims. *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 180 (1997) ("The court exercises original . . . jurisdiction [over § 1983 claims]."); *see* 28 U.S.C. § 1367(a). Whether a district court retains jurisdiction over the state law claims, however, is discretionary. 28 U.S.C. § 1367(c)(3) (If "the district court has dismissed all claims over which it has original jurisdiction," then it "may decline to exercise supplemental jurisdiction over a claim."). "Generally, when all federal claims have been dismissed, a district court should dismiss any pendent state law claims without prejudice so that the plaintiff may re-file his claims in the appropriate state court." *Clay v. Freebird Publishers*, No. CV H-19-3937, 2020 WL 529707, at *2 (S.D. Tex. Jan. 31, 2020) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

Therefore, the undersigned recommends any state law claims be dismissed without prejudice. Plaintiff may re-file any state claims in the appropriate state court, provided he has adhered to the appropriate notice and procedural guidelines of TTCA claims.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the filings, record, and relevant law, and for reasons set forth above, the undersigned recommends that Defendant Ivan Melendez, M.D.'s Traditional Motion for Summary Judgment (Dkt. No. 44) and Defendant County of Hidalgo's Motion for Summary Judgment (Dkt. No. 45) each be **GRANTED**, Plaintiff's federal claims be **DISMISSED with prejudice**, and any state law claims asserted by Plaintiff be **DISMISSED without prejudice**.

Further, with dismissal of allegations, Defendants' Joint Objections to Order on Motion for Production of Documents (Dkt. No. 36) and Plaintiff's Rule 20(a)(2)(A)(B) Motion for Joinder of Parties (Dkt. No. 37) are each recommended to be **DENIED as moot**.

*Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Plaintiff and counsel for Defendants.

**DONE** at McAllen, Texas, this _25th_ day of January, 2022.

Juan F. Alanis
United States Magistrate Judge